IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION,<br><br>      Plaintiff,<br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>      Defendants. | Case No. |

## DECLARATION OF JAY HARVEY PARAGOSO

I, Jay Harvey Paragoso, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am currently retained by MILWAUKEE ELECTRIC TOOL CORPORATION (hereinafter "MILWAUKEE TOOL"). I am knowledgeable about or have access to business records concerning all aspects of the Plaintiff's brand protection operation including, but not limited to, its trademarks, copyrights, other intellectual property, sales, online sales, advertising, marketing, media coverage, and associated international operations. I make this declaration from matters within my own knowledge, except where otherwise stated.

3. Plaintiff, MILWAUKEE TOOL, acts as the sales, marketing, design and distribution arm of MILWAUKEE TOOL products worldwide.

4. MILWAUKEE TOOL is in the business of developing, marketing, selling and distributing products under the MILWAUKEE Trademarks. MILWAUKEE TOOL is a Delaware corporation that develops, manufactures and markets power tools. For over 90 years, MILWAUKEE TOOL has led the industry in developing innovative solutions that deliver increased productivity and unmatched durability for professional construction and home users. MILWAUKEE TOOL is the official source of MILWAUKEE products:

https://www.milwaukeetool.com/



5. MILWAUKEE TOOL is the owner of the following U.S. Trademark Registration Nos.: 917,618; 1,489,877; 1,739,475; 2,624,843; 3,772,366; 3,908,609;

4,203,255; 4,203,258; 4,203,259; 4,207,146; 4,400,602; 4,407,484; 4,534,864; 4,580,441; 4,849,244; 5,085,184; 5,085,201; 5,085,219; 5,085,220; 5,085,222; 5,085,223; 5,085,240; 5,117,238; 5,117,290; 5,203,577; 5,203,630; 5,318,403; 5,645,535; 5,645,536; 5,645,537; 5,735,629; 5,735,630; 5,735,631; 5,735,632; 5,735,633; 5,894,915; 6,011,155; 6,175,446; 6,269,364; and 6,369,616 (the "MILWAUKEE Trademarks").

The above registrations for the MILWAUKEE Trademarks are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the MILWAUKEE Trademarks are attached hereto as Exhibit 1.

6. The MILWAUKEE Trademarks are distinctive and identify the merchandise as goods from MILWAUKEE TOOL.

7. The MILWAUKEE Trademarks have been continuously used and never abandoned.

8. MILWAUKEE TOOL has expended substantial time, money and other resources in developing, advertising and otherwise promoting the MILWAUKEE Trademarks. As a result, products associated with the MILWAUKEE Trademarks are recognized and exclusively associated by consumers, the public and the trade as products sourced from MILWAUKEE TOOL.

9. The success of the MILWAUKEE brand has resulted in its significant counterfeiting. Consequently, MILWAUKEE TOOL is implementing an anti-counterfeiting program and is investigating suspicious websites and online marketplace listings identified through external vendors in proactive Internet sweeps. MILWAUKEE TOOL has identified numerous domain names linked to fully

interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A which is attached to the Complaint (collectively, the "Defendant Internet Stores"), which were offering for sale, selling, and importing counterfeit products in connection with counterfeit versions of MILWAUKEE TOOL's federally registered MILWAUKEE Trademarks (the "Counterfeit MILWAUKEE Products") to consumers in this Judicial District and throughout the United States. Despite MILWAUKEE TOOL's enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores.

10. We perform, supervise, and/or direct investigations related to Internet-based infringement of the MILWAUKEE Trademarks. Our investigation shows that Defendants are using the Defendant Internet Stores to sell Counterfeit MILWAUKEE TOOL Products from foreign countries such as China to consumers in the U.S. and elsewhere. We, or someone working under our direction, analyzed each of the Defendant Internet Stores and determined that Counterfeit MILWAUKEE TOOL Products were being offered for sale to the United States, including Illinois. This conclusion was reached through visual inspection of the products listed for sale on the website, the price at which the Counterfeit MILWAUKEE TOOL Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendants offered shipping to the United States, including Illinois, and because Defendants and their websites do not conduct business with MILWAUKEE TOOL and do not have the right or authority to use the MILWAUKEE Trademarks for any reason. True and correct copies of screenshot printouts showing the active Defendant Internet

Stores reviewed are attached as Exhibit 2.

11. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers selling genuine MILWAUKEE TOOL Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon and PayPal. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. MILWAUKEE TOOL has not licensed or authorized Defendants to use its MILWAUKEE Trademarks, and none of the Defendants are authorized retailers of genuine MILWAUKEE TOOL Products.

12. Upon information and belief, Defendants also deceive unknowing consumers by using the MILWAUKEE Trademarks without authorization within the content, text, and/or meta tags of their web sites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MILWAUKEE TOOL Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine MILWAUKEE TOOL Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.

13. Defendants often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant Domain Names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

14. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit MILWAUKEE TOOL Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit MILWAUKEE TOOL Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HADJL user- defined variables, domain redirection, lack of contact information, identically or similarly priced similar hosting services, similar name servers, and the

use of the same text and images.

15. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

16. Counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as Amazon and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of MILWAUKEE TOOL's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

17. Monetary damages alone cannot adequately compensate MILWAUKEE TOOL for ongoing infringement because monetary damages fail to address the loss of control of and damage to MILWAUKEE TOOL's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to MILWAUKEE TOOL's reputation and goodwill by acts of infringement.

18. MILWAUKEE TOOL's goodwill and reputation are irreparably damaged when the MILWAUKEE Trademarks are used on goods not authorized, produced, or manufactured by MILWAUKEE TOOL. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to MILWAUKEE TOOL's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

19. MILWAUKEE TOOL is further irreparably harmed by the unauthorized use of the MILWAUKEE Trademarks because counterfeiters take away MILWAUKEE TOOL's ability to control the nature and quality of products used with the MILWAUKEE Trademarks. Loss of quality control over goods using the MILWAUKEE Trademarks and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

20. The sale of Counterfeit MILWAUKEE TOOL Products using the MILWAUKEE Trademarks also causes consumer confusion, which weakens MILWAUKEE TOOL's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit MILWAUKEE TOOL Products they have purchased originated from MILWAUKEE TOOL will come to believe that MILWAUKEE TOOL offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine MILWAUKEE TOOL Products, resulting in a loss or undermining of MILWAUKEE TOOL's reputation and goodwill. Counterfeit MILWAUKEE TOOL Products, primarily coming from China can be extremely dangerous and present alarming safety hazards to children.

21. MILWAUKEE TOOL is further irreparably damaged due to a loss in exclusivity. The MILWAUKEE TOOL Products are meant to be exclusive. MILWAUKEE TOOL's extensive marketing and distribution of MILWAUKEE TOOL Products are aimed at growing and sustaining sales of MILWAUKEE TOOL Products. The MILWAUKEE Trademarks are distinctive and signify to consumers that the products originate from MILWAUKEE TOOL and are manufactured to MILWAUKEE TOOL's high quality standards. When counterfeiters use the MILWAUKEE Trademarks on goods without MILWAUKEE TOOL's authorization, the exclusivity of MILWAUKEE TOOL's products, as well as MILWAUKEE TOOL's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

22. MILWAUKEE TOOL will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 13, 2025.

/s/